Oyez, oyez, oyez. The Honorable Appellate Court, 5th District, State of Illinois, is now in session. The Honorable Justice Bowie presiding, along with Justice Welch and Justice Moore. The first case this morning is number 519-0127, People v. O'Malley. Arguing for the appellant, People of the State of Illinois, is Max Miller. Arguing for the appellee, Catherine O'Malley, is Christina O'Connor. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. You'll see the digital timekeeping device on my screen. When time has expired, I'll hit the gavel. Please remember, only the clerk of the court is permitted to record these proceedings today. So, in 519-0127, Mr. Miller, are you ready to proceed? Yes, Your Honor. Then go right ahead. May it please the court. Counsel, my name is Max Miller and I represent the People of the State of Illinois. On March 21st, 2017, the defendant was charged with committing the offense of unlawful possession of a controlled substance. Roughly two years later, upon the discovery of defense counsel of statute 720-ILCS-570-414, the defendant filed a motion to dismiss, arguing limited immunity. A hearing was held on that motion, and the trial court filed an order dismissing the charge, finding that the defendant both had the burden of proving she was entitled to limited immunity and that she, in fact, did. The state filed this timely appeal. The state raises just one issue on appeal that the defendant made no showing of seeking or obtaining medical assistance, which would trigger the limited statutory immunity, and the evidence supports the opposite conclusion. This issue requires a mixed standard of review. The interpretation of a statute presents a question of law subject to de novo review, but challenges to the trial court's factual findings will be only reversed if they're against the manifest weight of the evidence. Beginning with the limited immunity statute, it states a person who in good faith seeks or obtains emergency medical assistance for someone experiencing an overdose shall not be charged or prosecuted if that charge was acquired as a result of the person seeking or obtaining emergency medical assistance. At the hearing on the defendant's motion to dismiss, the state presented testimony from Nancy Reifschneider, the owner of the property and aunt of a potential overdose victim, Lauren Gibson. She was the one who called 911, Ms. Reifschneider. She testified that Gibson appeared to be overdosing, and so she told her she was going to call 911. Gibson told Reifschneider she was fine, but proceeded to get into the passenger seat of a car with the defendant driving. Reifschneider testified that she had told the dispatcher that they were fleeing. Kurt Eversman of St. Clair County Sheriff's Department testified he was made aware of the call about a potential overdose, and that the car was heading west on North Belt. Eversman testified that North Belt West intersects with Route 15, where another officer, Deputy Calvin Savage, was following the car. The police effected a wellness and safety check and pulled the car over. Eversman testified that he observed heroin on the passenger seat, heroin on the driver's seat and floorboard, hypodermic needles on the passenger and backseat floorboards, and heroin on the backseat floorboard. Further, when the defendant exited the driver's seat, three pills were noticed by the officers, one on the driver's side floorboard. Eversman testified that Gibson was coherent, but had slurred speech, and that one of the males in the back, Wilford Rainey, was slumped over. And it was Rainey's behavior that motivated Eversman to call an ambulance to request for the administration of Narcan for Rainey. Eversman testified he did not recall anyone in the vehicle mentioning anything about seeking medical treatment. He testified that Memorial Hospital is 1.6 miles from the residence where Reif Schneider made the call, and where the victims had driven, or the potential victim had driven from. And that Touchette Regional Hospital was at 5900 Bond Avenue, and that the old St. Elizabeth's was open at the time, it would have been closer than Touchette. Essentially, Eversman provided the location of three hospitals, two of which were closer than Touchette. Deputy Calvin Savage then testified that he had been following the car on Route 15, that no one in the vehicle mentioned anything about trying to get to a hospital, wanting to go to a hospital, or seeking medical treatment in any way. Savage testified at the time of the vehicle stop, it was on Highway 15, that Belleville Memorial Hospital was nearby, but the vehicle was heading away from that hospital. Investigator Kevin Kokurek testified he conducted a recorded interview with the defendant after she was placed under arrest. Kokurek testified the defendant told him she had no idea where they were going, only that others in the vehicle wanted her to head towards the highway. Kokurek testified the defendant never mentioned anything about heading toward a hospital, seeking medical attention for herself, or any occupant of the vehicle. And specifically, Kokurek said the defendant said she had no idea where they were going. And this was borne out in the recorded interview, which was introduced into evidence. One of the few cases which discusses this relative, relevant limited immunity statute is People v. Tepper. In Tepper, the police were notified that multiple calls had come in concerning a driver who was slumped over the steering wheel of a vehicle. The vehicle was stopped in a westbound lane, a traffic offense. Officer saw defendant was not responsive, found two baggies of what they believed to be heroin. The officer believed the driver was experiencing overdose and administered Narcan. The defendant was charged with unlawful possession of a controlled substance, and defendant filed a motion to dismiss claiming limited immunity. The motion was denied. Defendant was convicted, and an appeal followed. When the appellate court affirmed the conviction, they held that section 414 did not apply because the evidence of the defendant's drug possession was not acquired as a result of the defendant seeking or obtaining emergency medical assistance. And they said even otherwise, the statute would not extend immunity to the defendant because the police had probable cause to arrest the defendant based on evidence that was not obtained as a direct result of the defendant seeking or obtaining emergency medical assistance. In other words, the court said defendant is not entitled to immunity under the plain language of section 414. And even if she were, the section would prohibit the extension of the immunity because the obtained emergency medical assistance. The Tepper court gives us an example of a situation where the statute would clearly apply, says section 414B would clearly apply to a situation in which two friends are using drugs together, one friend overdoses, and the other friend calls for emergency medical assistance. The statute allowing the friend to make the call without the fear that he or she will be charged with drug possession as a result, provided that the specific requirements, including the amount of drugs were met. Here, the police were called because a car whose occupants appeared to be fleeing, and they were called not by the defendant, but by Reifschneider from a residence, according to one witness, and they left the residence with one or more of its passengers actively overdosing. Vehicle was stopped for a safety check. The trial court found there was nothing illegal about the stop. Officers immediately observed drugs strewn around the interior of the vehicle. They observed at least one individual in the backseat who was unresponsive and likely overdosing. Despite this unrebutted evidence demonstrating that she never claimed to be seeking medical assistance, the trial court concluded that section 570-414 applied. The trial court's order states, the defendant was driving in the direction of Touchet hospital, which is known for its drug detox program, and she was seeking medical attention for the passenger suffering from an overdose. But there's simply no evidence of either the defendant heading to that specific hospital, other than the fact that she was on a route that could ultimately end up at that hospital, as opposed to simply driving in its general direction. When she was questioned... Let me ask you this question. Yes, your honor. What's the standard of review as far as the trial court's factual findings? Uh, that they must be against the manifest weight of the evidence to be reversed. So it's your position that it's against the manifest weight? Yes, yes. And that not only did the evidence, the testimony presented by the state, you know, overwhelmingly prove that she was not seeking medical assistance, but that she presented no evidence to show anything to the contrary. So even if the burden had been on the state to prove that she was not, as opposed to the defendant, to trigger the qualified immunity, that the state would have still proven that she was not seeking or obtaining medical assistance. She didn't show an express or even an inferred intent to seek medical assistance for the passenger. By her own testimony in the video, when she was interviewed by investigator Coker, she said she didn't know where she was going. She was listening to other people in the back seat. Are there any other questions? What does it mean that the people in the back seat were directing her to the hospital? It's, it is possible, your honor, but we don't know about what they were saying. There is not. And, uh, as the defendant will points out in their answer brief, um, that there were interviews conducted with two of those, but they're not part of the record. They were not admitted at the hearing. And so the state would maintain that they're not relevant to this analysis at this point. Um, your honor. Okay. Thank you. Okay. Uh, so for the foregoing reason, the people respectfully request this court reverse the judgment of the circuit court, dismissing the charge and remand for further proceedings. Thank you. Thank you. Mr. O'Connor. Hello, O'Connor. I'm an assistant appellate defender at the office of the state appellate defender. And I represent Ms. Catherine O'Malley in this matter. This case involves a very important statute, one that is designed to save lives. No one should ever have to decide between seeking life-saving emergency assistance for someone experiencing an overdose, helping law enforcement render the proper aid to save someone's life or going to prison for possessing a small amount of drugs. Here, after the trial court held a hearing and heard the facts and evidence, the court made the reasonable finding that Ms. O'Malley was seeking medical attention for her passenger suffering from an overdose, thus having limited immunity from prosecution for the possession of a controlled substance charge. The state has failed to meet its burden of proving this decision is against the manifest weight of the evidence. Therefore, this court should affirm the trial court's decision. In this case, the trial court was in the best position to consider this matter and make credibility findings. And the trial court's decision of immunity is supported by the facts. As the state pointed out, Ms. O'Malley initially talked about the facts. However, the state failed to mention that Ms. O'Malley went to Gibson's home to help her initially. She observed that everybody was using and Gibson started to experience overdose symptoms. Ms. O'Malley actually performed CPR on Gibson and revived her. At that point, Reif Schneider, who is Gibson's aunt, came to the home, saw what was going on and stated that she was going to call for medical assistance. And Ms. O'Malley decided that because Gibson seemed that she came back to and Reif Schneider was taking care of the situation, she could leave. Ms. O'Malley did not encourage anybody to come with her. However, Rainey, Gibson, Brooks, and Allen all rushed to the car and said, do not leave without us. As the state pointed out, the only reason that Ms. O'Malley was pulled over was because of the 911 call that Reif Schneider initiated. And officers did not observe any inherent traffic violations or any other reason to pull her over. So here, the state focuses on two points of why the trial court's decision is against the manifest weight of the evidence. However, both of these arguments fail. First, while Ms. O'Malley stated she did not know where she was going, that does not mean that they were not going to the hospital. The trial court made a credibility finding here after hearing all of the evidence. And the court's inference that Ms. O'Malley had intention to help her passengers is supported by the record. As Your Honor pointed out, Ms. O'Malley was being directed by her passengers on where to go. And those statements are not included in the record, even though counsel did attempt to that motion was never heard, unfortunately. And they were heading in the direction of the hospital, which is known for its drug detox program, Touchette. The state's second argument is that Ms. O'Malley was actually heading in the opposite direction of the closest hospital. However, this argument is weak. These all three hospitals were within minutes apart of each other. And there was evidence that Touchette Regional Hospital is known for its drug detox program. So in the situation where the passengers know that there are two people presumably experiencing an overdose and there's a hospital known for its drug detox program, that would be the best place to take their passengers for the best care here. And again, the court made reasonable inference. Yes. Nowhere in the testimony given at that hearing did the defendant or anybody else talk about which hospital they were going or which had a better detox program. There was nothing of that nature in the testimony, correct? The trial counsel and below gave testimony about how Touchette is known for its drug detox program. Officers were asked this question. However, they just stated that their job was to take drug users to jail and not to treat them and they would just go to the closest hospital. And ambulances were the ones that would make that decision. The defendant herself never made a statement or testified as to she knew that one was better than the other for their detox program. No, Your Honor, the only evidence of what Miss O'Malley was intending in this situation was in that interview. And she just stated that she did not know where they were going and the passengers behind her were directing her and everybody was yelling and freaking out. However, again, the court made reasonable inferences here and was in the best position to consider this evidence and the trial court is presumed to know the law. So from hearing that Miss O'Malley provided Gibson with CPR, that they were heading in the direction of Touchette Regional Hospital, the trial court's findings are reasonable here and the state has failed to meet its high burden of showing that the court's findings are unreasonable or against the manifest weight of evidence. The purpose of the statute, again, is to save lives. No one should ever fear seeking emergency medical attention when a life is at risk. And we never want to discourage people from getting help in these situations. And the state's narrow reading does not go with the purpose and spirit of the statute. As the state discussed, Tepper is one of the cases that is precedent in this situation and a clear example of when this statute does not apply. And there's another case, People v. Markham, which is a clear example of when the statute does apply. As the state pointed out, in Tepper, the police had independent probable cause of the defendant committing a traffic violation, which clearly the legislature intended to bar this protection because of that situation. And nobody was actively seeking help for the defendant. It was two people, completely unrelated, who went to officers and called 911 and said, hey, there's somebody passed out blocking traffic. On the other hand, in Markham, it was a situation where there were two friends doing drugs together. One started to experience an overdose, and the other one commenced CPR and called 911. After the ambulance arrived and the defendant was seeking medical attention, he asked the officer to go and get his wallet. And then the officer found the drugs, which were subject to the charge that he was charged with. And the court held that the trial court's grantal of immunity was proper in that situation. And the Markham court specifically held, and this is on paragraph 20 of the case, that in order for the act to work and save lives, those witnessing or experiencing an overdose must have immediate and absolute assurance that the courts will uphold the provisions of the act by prohibiting prosecution for items observed by first responders at the scene after being summoned to that location to prevent a death by overdose. And here, the trial court reasonably inferred that Ms. O'Malley was seeking emergency medical help for her passengers. This furthers the spirit of the statute, and the state has failed to meet its burden. The trial court heard all the facts and ruled that Ms. O'Malley should have limited immunity from prosecution for this charge. This was a reasonable decision, and it is not against the manifest weight of the evidence. Do your honors have any other questions? I'd just like to correct one thing. It's touche, not touche. Oh, I apologize, your honor. Both sides. Both sides are your equal. Do your honors have any other questions or statements? Nope. Okay. Therefore, Ms. O'Malley respectfully ask this court to affirm the trial court's decision. Thank you. Thank you, Ms. O'Connor. Mr. Miller, rebuttal? Just briefly, your honors. May it please the court, counsel. First, I just wanted to address this idea that the defendant was seeking medical attention. It's relevant here to know that the defendant is not the one who called 911. When the defendant and Ms. Gibson were made aware that 911, that emergency medical services were potentially on the way, they left. There doesn't seem to be a good reason why they would do that. But further, the ambulance that arrived to administer Narcan to Rainey, not to Gibson. It's not clear that Gibson was the one experiencing an overdose. That's possible. That was Ms. Reifschneider's opinion of it, but that's who the defendant administered CPR on. But the reason that an ambulance was called to administer Narcan was because of Rainey, who was in the backseat of that car. And so it's not clear that the defendant was doing anything to assist him. Also, the state would just point out that... If there's no further questions, the state would respectfully request this court reverse. Any other questions? Justices? Well, thank you, counsel. We'll take this under advisement and we'll issue a decision of due course. Thank you. Thank you, your honors.